885 So.2d 534 (2004)
Laura E. TRUNK
v.
MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS, State of Louisiana, Louisiana Health Care Authority, John Doe and ABC Insurance Company.
No. 2004-C-0181.
Supreme Court of Louisiana.
October 19, 2004.
*535 Charles C. Foti, Jr., Attorney General, David P. Bains, Assistant Attorney General, Counsel for Applicant.
Patrick G. Kehoe, Ignatz G. Keifer, Jr., Counsel for Respondent.
KIMBALL, Justice.
We granted certiorari in this slip and fall case to address the judgment of the district court that granted plaintiff's motion for JNOV on the issue of damages, set aside the jury's verdict awarding damages in the amount of $52,901.79, and awarded damages in the amount of $790,000.00. A review of the record in this case indicates that conflicting evidence was presented on the issue of damages and that the jury's verdict was not unreasonable. Therefore, we conclude that the district court erred in granting plaintiff's motion for JNOV on the issue of damages.

Facts and Procedural History
On January 31, 1996, Laura Trunk ("plaintiff") was a third year medical student who was completing a required rotation in the psychiatric ward at the Medical Center of Louisiana at New Orleans ("Medical Center"). On that date, the 26-year-old plaintiff slipped and fell on a foreign substance as she exited a conference room in the psychiatric unit on the third floor of the Medical Center. Subsequently, plaintiff filed suit under *536 La. C.C. art. 2315 against several defendants, including the Medical Center and the State, for damages she allegedly suffered as a result of the fall. Plaintiff claimed that she suffered severe injury to her left wrist when she fell. Specifically, plaintiff contended that she suffered ligament injuries to her left wrist that required arthroscopic surgery, that she requires additional surgery, that she suffers from carpal tunnel syndrome, that she continues to experience pain in her wrist, and that she could not specialize in Gastroenterology as she had planned prior to the accident.
A jury trial was held on April 3, 4 and 8-12, 2002, during which time both plaintiff and defendants moved for a directed verdict on liability. The district court denied defendants' motion, but granted plaintiff's motion for directed verdict on the issue of liability. In its judgment on directed verdict signed June 4, 2002, the district court rendered judgment in favor of plaintiff and found that defendants were 100 percent at fault or negligent. The district court also decreed that the only issue to be decided by the jury was the amount of damages to be awarded to plaintiff. Subsequently, the jury awarded plaintiff damages in the total amount of $52,901.79. The award included $35,000.00 for physical pain and suffering, and $17,901.79 for past medical expenses. The jury made no award for mental pain and anguish, permanent disability, future medical expenses, or future loss of earning capacity. The district court signed a judgment in accordance with the jury's verdict on June 4, 2002.
On June 12, 2002, plaintiff filed a motion for judgment notwithstanding the verdict ("JNOV"), additur and/or a new trial. After a hearing, the district court granted plaintiff's motion for JNOV, stating:
It is obvious that the jury full[y] an[d] unequivocally accepted the fact that plaintiff's injury, treatment and the need for surgery was causally related to the accident. However, the jury in this case clearly disregarded the overwhelming w[e]ight of the evidence, in that it failed to appreciate the severity of plaintiff's wrist injury, it failed to see the undeniable need for future medical expenses, and the jury totally disregarded the catastrophic impact Ms. Trunk's injury had on her future earnings potential.
The district court set aside the jury's verdict and awarded damages in the following amounts: $250,000.00 in general damages, $40,000.00 in past and future medical expenses, and $500,000.00 in future loss of earning capacity. Thus, the total amount awarded by the district court upon its granting of the JNOV in favor of plaintiff was $790,000.00.
The court of appeal affirmed the judgment of the trial court. Trunk v. Medical Ctr. of Louisiana at New Orleans, 03-0275 (La.App. 4 Cir. 12/17/03), 863 So.2d 675. The court of appeal found that the district court did not abuse its discretion in granting the motion for directed verdict on the issue of liability. Additionally, the court of appeal rejected defendants' argument that plaintiff's exclusive remedy was in workers' compensation, reasoning that the record contains no evidence that there existed an employer-employee relationship between plaintiff, a student, and the Medical Center. Regarding the JNOV, the court of appeal agreed with plaintiff's argument that the jury failed to appreciate the severity of her injury and failed to properly apply the facts and law to her case. The court of appeal concluded that the district court properly granted plaintiff's motion for JNOV and, after reviewing the evidence presented at trial regarding damages, found that the district court did not abuse its vast discretion in its de novo award of damages.
*537 Upon the application of the Medical Center, we granted certiorari specifically to consider the issue of damages, i.e., whether the district court erred in granting plaintiff's motion for JNOV. Trunk v. Medical Ctr. of Louisiana at New Orleans, 04-0181 (La.3/26/04), 871 So.2d 332.

Discussion
The use of JNOV is provided for by La. C.C.P. art. 1811. A JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). Article 1811 does not specify the grounds upon which the district court may grant a JNOV; however this court has set forth the criteria to be used in determining when a JNOV is proper as follows:
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99 (internal citations omitted). See also VaSalle v. Wal-Mart Stores, Inc., 01-0462, p. 11 (La.11/28/01), 801 So.2d 331, 338-39. The rigorous standard of JNOV is based upon the principle that "when there is a jury, the jury is the trier of fact." Joseph, 00-0628 at p. 5, 772 So.2d at 99 (quoting Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270, 273 (La.1986)).
In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. VaSalle, 01-0462 at pp. 11-12, 801 So.2d at 339. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." Id. at p. 12, 801 So.2d at 339 (quoting Joseph, 00-0628 at p. 5, 772 So.2d at 99). If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. Id.
In the instant case, the district court granted a JNOV on the issue of damages because it found that the jury "clearly disregarded the overwhelming w[e]ight of the evidence," "failed to appreciate the severity of plaintiff's wrist injury," "failed to see the undeniable need for future medical expenses," and "totally disregarded the catastrophic impact Ms. Trunk's injury had on her future earning potential." While plaintiff agrees with the district court's assessment, defendants contend the jury's verdict was reasonable in light of the evidence presented. After reviewing the record in this case, we find that reasonable minds could differ on the entitlement to and calculation of damages. We therefore conclude the district court erred in granting plaintiff's motion for JNOV on the issue of damages.
*538 Regarding plaintiff's damages, the record reveals that plaintiff was taken to the emergency room soon after she fell. An x-ray of plaintiff's wrist was taken and her wrist was placed in a splint. The emergency room physicians referred plaintiff to an orthopedic clinic, which she visited the next week. At the clinic, plaintiff was treated by Dr. D.J. Phillips, who placed a thumb spica cast on the plaintiff's left wrist to provide more immobilization of the wrist. She saw Dr. Bradley Edwards two weeks later, and a new cast was placed on plaintiff's wrist because of her continuing complaints of pain. Dr. Phillips and Dr. Edwards reviewed the x-rays of plaintiff's wrist and were of the opinion that she had a possible scaphoid fracture.
On February 26, 1996, the plaintiff saw Dr. Robert Chuinard, an orthopedic surgeon at the Medical Center. His diagnosis was probable DeQuervain's syndrome of the left extremity, which indicated an inflammation of tendons in the thumb. Dr. Chuinard did not believe that plaintiff had a fractured scaphoid, did not find any swelling or bruising, and did not find any indication of ligamentous disruption. He gave plaintiff steroid injections in her wrist.
Plaintiff sought a second opinion from Dr. Harold Stokes, an orthopedic surgeon who specialized in wrist surgery. Dr. Stokes initially examined plaintiff on May 30, 1996. Plaintiff was again treated by Dr. Stokes in 1997 and then again in 2000. Dr. Stokes testified that upon his examination of plaintiff's wrist, he found she had steroid atrophy of the first dorsal compartment, i.e., loss of muscle tone and skin discoloration. He testified that plaintiff reported continued pain in her wrist. Dr. Stokes found that plaintiff had tendon and ligament injuries. Dr. Stokes' initial diagnosis was a disruption of the ligaments between the scaphoid and the lunate. Tests revealed that plaintiff was also suffering from carpal tunnel syndrome.
Because her symptoms did not resolve, Dr. Stokes performed diagnostic arthroscopic surgery in December 2000. During the surgery, Dr. Stokes performed a left carpal tunnel release to alleviate the pressure on the median nerve that was causing inflammation and swelling of the wrist joint. During the arthroscopic surgery, Dr. Stokes found that the radioscapholunate ligament was torn, and the joint surface was severely disrupted. Dr. Stokes noted improvement in plaintiff's condition after surgery, but because plaintiff continued to complain of pain and limited motion in her wrist, Dr. Stokes recommended that plaintiff undergo another diagnostic arthroscopic surgery, perhaps in conjunction with a fusion, in the future.
At the time of trial, plaintiff ran her own practice in internal medicine. Plaintiff testified she continues to have pain in her wrist, cannot perform routine daily tasks without pain, and is limited in the medical procedures she can perform on patients. She also testified that her dream was to become a gastroenterologist, but that she could not be a gastroenterologist after the accident because she could not perform many of the delicate procedures required of gastroenterologists due to the problems she had with her wrist.
Dr. Persich, a gastroenterologist who supervised plaintiff during her residency gastroenterology rotation, testified that plaintiff performed well during the rotation. He also testified that she never mentioned that she suffered from pain or disability in her hands or wrists and that he had never noticed that plaintiff suffered any pain or discomfort during her training.
Testimony at trial revealed that although plaintiff applied for fellowships in gastroenterology following her accident, she was not selected to a gastroenterology *539 program. The evidence showed that plaintiff did not inform the programs of her injury and was not selected for a gastroenterology fellowship during the competitive process because other applicants were more qualified than she.
The evidence at trial also included testimony regarding various vocational evaluation tests performed by plaintiff at different times by different evaluators. While some testimony and evidence indicated that plaintiff suffered impairment in her left wrist and that plaintiff participated fully and to the extent of her capacity in those tests, other testimony revealed that test results showed plaintiff put forth sub-maximal effort during some tests.
Finally, economic evidence was presented that revealed that gastroenterologists typically earn more money than internists. Thus, had plaintiff become a gastroenterologist instead of an internist, she would have earned more money during her lifetime. Some testimony indicated that plaintiff would lose money as an internist due to her inability to perform some procedures; however, other testimony revealed that plaintiff was not limited in her ability to perform procedures typically performed by internists and that plaintiff could fill her schedule with procedures she was able to perform so that she would not actually lose money in her practice. Dr. Long testified that since plaintiff was not offered a gastroenterology fellowship, she would not suffer any monetary loss as an internist because of her injury. Consequently, he testified, plaintiff had not incurred any future loss of earning capacity.
At the close of the evidence, the jury awarded plaintiff damages in the amount of $52,901.79. This award included $35,000.00 in physical pain and suffering and $17,901.79 in past medical expenses. The jury did not award damages for mental pain and anguish, permanent disability, future medical expenses, or future loss of earning capacity. The assessment of "quantum," or the appropriate amount of damages, by a jury is a determination of fact that is entitled to great deference on review. Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. A thorough review of the record in this case indicates the jury's awards were reasonable in light of the evidence presented. The jury obviously believed plaintiff sustained some damages as a result of the fall as it awarded her a significant amount of damages for physical pain and suffering and for her past medical expenses. The jury's failure to assess damages for mental pain and anguish, permanent disability, future medical expenses, and future loss of earning capacity indicates they might not have believed plaintiff's injury was as severe or as persistent as she contended. It is probable the jury did not believe that her injury was the reason she was not chosen for a gastroenterology fellowship. Additionally, the fact that the jury did not award damages for future medical expenses leads us to believe that the jury determined plaintiff was not in need of future medical care for symptoms related to the injuries she sustained in the fall. The record contained conflicting evidence related to the extent of plaintiff's injury, pain, and physical limitations. Plaintiff's credibility was challenged by defense witnesses. In light of the conflicting nature of the evidence presented at trial, we cannot say that the jury's verdict was unreasonable. Stated differently, we find that based on the evidence presented in this case, reasonable minds could differ on the assessment of damages. The amounts awarded by the jury were well within its vast discretion. Therefore, we find the district court erred in granting a JNOV.
La. C.C.P. art. 1811 clearly states that a motion for JNOV may be joined with a *540 motion for new trial or that a new trial may be moved for in the alternative. The article states that if the motion for JNOV is granted, the court shall also rule on the motion for a new trial by determining whether it should be granted if the JNOV is thereafter vacated or reversed. La. C.C.P. art. 1811(C)(1). Article 1972 of the Code of Civil Procedure provides that a new trial shall be granted, upon contradictory motion, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Additionally, La. C.C.P. art. 1973 provides that a new trial may be granted "in any case if there is good ground therefor, except as otherwise provided by law."
In the instant case, plaintiff moved for a new trial as an alternative to her motion for JNOV. The district court, however, did not address plaintiff's alternative request for a new trial as required by La. C.C.P. art. 1811. Nevertheless, we decline to remand this particular matter to the district court for it to rule on the motion for new trial because such an action would be contrary to the concept of judicial economy and the interest of the parties in having this lawsuit concluded. Because we have previously concluded that the jury's verdict was reasonable in light of the evidence presented, we find that plaintiff is not entitled to a new trial. See VaSalle, 01-0462 at p. 18, 801 So.2d at 342.
Because we granted this writ to address the issue of damages, we pretermit discussion of the Medical Center's other claims and do not pass on the correctness of the court of appeal's opinion as to the remaining issues.

Conclusion
For the reasons expressed herein, we find the jury's verdict was reasonably supported by the evidence presented in this case. Consequently, the district court erred in granting plaintiff's motion for JNOV on the issue of damages and the court of appeal subsequently erred in affirming the district court's judgment granting the JNOV. Plaintiff is not entitled to a JNOV or a new trial. In light of these findings, we hereby reinstate the jury's verdict.
REVERSED IN PART. JURY VERDICT REINSTATED.