927 So.2d 492 (2006)
In re GRAMERCY PLANT EXPLOSION AT KAISER
(Lodged as Carl Bell, et al.
v.
Kaiser Aluminum and Chemical Corporation).
Nos. 04-CA-1151 to 04-CA-1191.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
*494 Walter C. Dumas, Patti Durio Hatch, Dumas and Associates Law Corporation, Baton Rouge, Louisiana, Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, Louisiana, for Plaintiff/Appellee/2nd Appellant, Terrence Hayes, Individually and On Behalf of His Minor Child, Jocelyn Pearl Hayes.
Caleb H. Didriksen, Diane R. Cosenza, Ronald J. Ventola, John J. Ruskin Didricksen Law Firm, Gonzales, Louisiana, for Plaintiffs/Appellees, Kaiser Alumina & Chemical Corporation/AXA Global Risks, et al.
Louis C. Lacour, Jr., Raymond P. Ward, Adams and Reese LLP, Ernest P. Gieger, Jr., Andrew A. Braun, Gieger, Laborde & Laperouse, LLC, Robert E. Winn, Sharon Cormack Mize, Sessions, Fishman & Nathan, LLP, New Orleans, Louisiana, for Defendant/Appellant, Thomas & Betts Corp.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
This is an appeal in an action comprising numerous consolidated cases from the Twenty-Third Judicial District Court, St. James Parish, arising out of a massive industrial explosion at the Kaiser Aluminum plant in Gramercy on July 5, 1999. At issue on the appeal is the liability of one defendant, Thomas & Betts Corporation. We reverse the trial court's grant of judgment notwithstanding the verdict and reinstate the jury's verdict. We also reverse the trial court's grant of a conditional new trial.

PROCEDURAL HISTORY
Originally there were 71 lawsuits arising from the Kaiser explosion, most of which were consolidated.[1] The plaintiffs included not only persons directly injured in the plant, but also inhabitants of the surrounding area, as well as commercial entities and insurers seeking compensation for property damage and business losses, and/or indemnification for any liability to other claimants.[2]
By the time of trial, all of the cases had been settled and/or dismissed except three: a suit by Kaiser Aluminum & Chemical Corporation ("Kaiser") for its uninsured losses caused by the explosion;[3] a personal injury suit by Kaiser employee Terrence Hayes ("Hayes");[4] and a suit by Kaiser's subrogated reinsurersAXA Global Risks (U.K.), et al. (collectively "AXA")for Kaiser's insured losses.[5]
*495 The defendants in these suits included Power & Control Systems, Inc. and Power & Control Systems International, Inc. (collectively "PCS"), which designed the electrical system at the Kaiser plant; MEI Corporation, MEI Electrical, Inc., Merit Electrical & Instrumentation, Inc., and Merit Electrical, Inc. (collectively "MEI"), and Excel Group, Inc., formerly known as Excel Electrical & Instrumentation, Inc. (collectively "Excel"), electrical contractors that performed work at the plant; Thomas & Betts Corporation ("T & B"), manufacturer of adhesive mounts used to hold wiring in the plant; Adhesives Research, Inc. ("ARI"), manufacturer of the adhesive used in the adhesive mounts; Walter Hansley, a worker alleged to have been instrumentally negligent in events leading to the explosion; Manpower, Inc., Manpower International, Inc. (collectively "Manpower"), the employers of Hansley; and Schweitzer Engineering Laboratories, Inc., manufacturer of an electrical relay used at the plant.
Kaiser and AXA (hereafter "Kaiser/AXA")[6] alleged that the explosion was caused by a power failure that began about a half-hour before the explosion and that the power failure was caused by concurrent fault of PCS, Schweitzer, MEI, Excel, T & B, and ARI. Kaiser/AXA contended the root cause of the power failure was improper installation of a handful of one-inch-square adhesive-backed cable-tie mounting bases (commonly referred to as "sticky-backs") inside high-voltage switchgear in an electrical building (Switch House 2) at the Kaiser plant.
Kaiser/AXA alleged the wiring ("CT leads") that was routed through the sticky-backs came into contact with a high-voltage bus bar when several sticky-backs came loose from the cabinet wall to which they were attached. Kaiser/AXA claimed the contact degraded the insulation on both the CT leads and the bus bar, eventually leading to a short-circuit (technically, a phase-to-ground fault). The fault caused a chain reaction, in which circuit breakers tripped on all three loop feeders supplying power to the plant, resulting in a power outage.
Kaiser/AXA alleged that PCS was negligent in failing to design the electrical system so that a fault in Switch House 2 would not take the entire electrical loop off-line and, further, that PCS was negligent in failing to program the computerized Schweitzer electrical relays properly. They alleged Excel was negligent for using sticky-backs inside high-voltage switchgear, where their coming loose could cause an electrical fault, and that T & B was liable for failure to warn Excel about the limitations inherent in the sticky-backs.
In response, T & B filed incidental actions against Kaiser and AXA, alleging that Kaiser destroyed, altered, concealed or denied T & B access to evidence bearing on the cause of the power failure.
*496 The trial commenced on October 8, 2001 before a twelve-member jury, and continued over the course of 27 days.
Briefly, the evidence established that the explosion evolved following a power failure in Switch House 2, caused when electrical wiring that had been run along the side of a switchgear cabinet fell onto a piece of high-voltage bus bar, resulting in a phase-to-ground fault that interrupted power. Although Kaiser had a system that was supposed to isolate such power failures so that the whole plant would not be shut down, the system failed. Employees took actions intended to prevent overheating of the large towers (known as flash tanks) that process bauxite into alumina (a production phase in producing aluminum). However, the actions failed because some of the equipment was not operating properly. Within a short time the tanks overheated and exploded.
On November 19, 2001, the jury returned a verdict that absolved Schweitzer, T & B, and Hansley/Manpower of fault, but found that Kaiser, MEI, and PCS were at fault, their fault was a legal cause of the explosion, and apportioned their fault as follows: Kaiser, 75%; MEI, 5%; PCS, 20%. The jury awarded damages to Terrence Hayes in the amount of $20,307,000.00, but denied damages to his daughter for loss of consortium, and denied damages to Kaiser, and to its insurers (AXA, et al.).
After the jury returned its verdict, Kaiser, AXA and Hayes filed motions for judgment notwithstanding the verdict (JNOV) and, alternatively, for new trial. The trial court granted JNOV in favor of Kaiser/AXA and against T & B, and also granted the motion for new trial conditionally, in the event the JNOV is reversed on appeal.
In the JNOV, the court found T & B to be 25% at fault, reduced Kaiser's allocation of fault to 60%, reduced the fault of PCS to 10%, and maintained the jury's fault allocation of 5% to MEI. The court also granted JNOV as to damages, awarding Kaiser/AXA combined damages of $335 million, $122 million less than the $457 million requested by Kaiser/AXA. Finally, the court provisionally granted Kaiser/AXA's motion for new trial, in the event the JNOV is be reversed on appeal, and ordered that the new trial be held in a different venue.
The JNOV maintained the jury's finding in favor of Hayes and also upheld the amount of the damage award to him.

ISSUES ON APPEAL
Originally both T & B and Hayes appealed; Hayes, however, dismissed his appeal and only the issues raised by T & B are before us.
On appeal T & B makes the following assignments of error:
1. The trial court usurped the jury's fact-finding function when it ignored substantial record evidence supporting the jury's verdict, and granted Kaiser's and AXA's motion for judgment notwithstanding the verdict.
2. The trial court erroneously ordered a (conditional) new trial despite the absence of any prejudicial irregularity in the course of the trial.
3. The trial court's grant of a change of venue (in the event of a new trial) is unsupported by the record and is inconsistent with La.C.C.P. art. 122.
4. The trial court erred by failing to exclude damages to non-Kaiser entities from its award and by failing to reduce the award to account for depreciation and for operational betterments inherent in the rebuilt plant.

*497 LAW AND ANALYSIS

JNOV
T & B contends the trial court committed legal error by granting a JNOV against T & B after the jury exonerated T & B.
The Louisiana Products Liability Law, the basis for liability of T & B, provides in pertinent part:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
* * *
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
La.R.S. 9:2800.57.
In granting the JNOV, the trial court gave extensive written reasons within the judgment. He stated, first, the court had denied the plaintiffs' motion for a directed verdict against T & B at the close of trial because "the Court was of the opinion that it could be a jury question whether or not the power outage was a substantial cause in fact of the explosion."
There was no question in the court's mind as to whether reasonable and fair minded men would find that Thomas & Betts had failed in its duty as set out under the LPLA by its complete failure to warn. The jury did find that the Thomas & Betts product failed in service, as is evident by their finding that the acts of Excel/MEI and PCS were legal causes of the accident and explosion. There is no other reasonable explanation for the attribution of fault to Excel/MEI and PCS. Having found that the power outage was cause by the failure of the Thomas & Betts product (the only work Excel/MEI performed that could be related in any way to the accident and explosion) this court believes the jury had to attribute fault to Thomas & Betts, whose product failed to satisfy the minimum requirements of products in Louisiana. As the jury failed to fulfill their responsibility to require this manufacturer to comply with its duty, this Court will rectify that problem.
Finding that the jury erred, the court held that "the facts, inferences and the LPLA standards ... point so favorably to the conclusion that Thomas & Betts bears fault for this accident and that Kaiser/AXA suffered substantial damages, that reasonable men could not reach the decision made by the jury," and granted the motion for JNOV, listing these reasons:
With respect to liability, the court finds that Kaiser, Thomas & Betts, Excel/MEI and PCS all bore fault for this event. The court finds that Kaiser bore the majority of the fault through the acts of its employees and through its failure to have its overpressure safety systems fully operational on the day of the accident, and assigns Kaiser 60% of the fault for the overall event. Thomas & Betts products were amply proven to be defective and not in compliance with the LPLA, and the power outage was acknowledged by the jury to be a causative factor in the overall event. I agree with the jury finding that the electrical outage was a substantial causative *498 factor in the overall event. I assign the next highest responsibility for the overall accident to Thomas & Betts, to which I assign 25% fault. Thomas & Betts had specific knowledge with respect to suitability and use of their product which they withheld from the public. It is obvious that marking a product "for temporary use only" would reduce sales of that product. The court finds that Thomas & Betts made a choice to enhance its sales instead of properly warning the public about its product limitations, of which it was well aware. Excel/MEI, the electricians who installed the Thomas & Betts product, were found by the jury to have borne 5% of the fault for their use of the T & B product, which conclusion I will not disturb. PCS, the engineering overseers of Excel/MEI and programmer of the Schweitzer relays for Kaiser was found by the jury to bear 20% of the fault for this accident. As Thomas & Betts provided the engineering diagram to any of its customers who asked, which shows the intended use of the product to be identical to the manner in which Excel/MEI and PCS used it, I will reduce the fault of PCS to 10%. I concur with the jury, and do not find Schweitzer Engineering Labs to have borne any fault for this particular power outage or accident. I also concur with the jury and do not find Walter Hansley/Manpower to have borne any fault to this particular accident.
A motion for JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). The strict criteria for granting judgment notwithstanding the verdict (JNOV) is predicated on the rule that when there is a jury, the jury is the trier of fact. Smith v. State, Dept. of Transp. & Development, 04-1317, 04-1594 (La.3/11/05), 899 So.2d 516.
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Trunk v. Medical Center of Louisiana at New Orleans, 04-0181, p. 4 (La.10/19/04), 885 So.2d 534, 537, citing Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99; see also VaSalle v. Wal-Mart Stores, Inc., 01-0462, p. 11 (La.11/28/01), 801 So.2d 331, 338-39.
In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the *499 motion and the jury verdict should be reinstated. [Citations omitted.]
Trunk, 04-0181 at p. 5, 885 So.2d at 537.
In ruling on a motion for a judgment notwithstanding the verdict (JNOV), the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party; this rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact. Martin v. Heritage Manor South Nursing Home, 00-1023 (La.4/3/01), 784 So.2d 627.
T & B asserts a reasonable jury could find Excel negligent for failing to comply with Kaiser's general specifications governing Excel's work. T & B states there is ample basis for a reasonable jury to assign fault to Excel and PCS without assigning fault to T & B. For example, the jury could have decided Excel was negligent in failing to understand or follow Kaiser's general specifications for the job, which required the CT leads to be enclosed in flexible metal conduit. (It was uncontested that had conduit been used, the power failure would not have occurred.)
In addition, T & B argues, the jury could reasonably expect that Excel, a professional electrical contractor, already knew or should have known about the obvious limitations of a peel-and-stick wire mount and the inappropriateness of using such a product in a high-voltage cabinet.
Further, negligent programming of the Schweitzer relays by PCS escalated a fault in a single switch house into a plant-wide power failure.
Finally, T & B urges that the jury's reasonable allocation of fault mandates reversal of the JNOV. Specifically, T & B avers, the 25% fault assigned to the electricians (PCS & Excel) and the 75% fault allocation to Kaiser are reasonable allocations of fault.
With respect to T & B's liability, the evidence was that William Philyaw bought a package of T & B mounting bases, which he had used on numerous prior occasions. He used these adhesive-backed plastic bases to attach low-voltage electrical control wires to the wall in a switchgear cabinet at the Kaiser plant. Philyaw was an employee of electrical contractor Excel.[7]
By July 5, 1999, 13 months after they were installed, all of the T & B mounts in the switchgear cabinet had fallen off the wall and the wires they previously supported were loose and sagged against a high-voltage bus bar. The resulting phase-to-ground fault ultimately resulted in the explosions and catastrophic damage.
Philyaw said at trial he would not have used the T & B bases if T & B had supplied warnings that the bases were not intended for permanent installations. T & B points out, however, that Philyaw must have known that the sticky-backs might come loose over time, because he said he tried to route the wires so that if for some reason the wire came off the wall, it would not contact the bus bar.
Philyaw denied knowing the sticky-backs might loosen, but a reasonable jury could find his actions indicated otherwise. Philyaw admitted he had seen a few sticky backs come off walls before.
There was also testimony that Kaiser's engineer, Ken Scannapiego, knew that sticky-backs may detach from the surface, *500 and that Kaiser's electrical maintenance superintendent, John Scavona, would not have used the product in a high voltage application.
It is the jury's prerogative to assess witness credibility. In ruling on a motion for JNOV, the trial court may not evaluate credibility, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Joseph v. Broussard Rice Mill, Inc., 00-628, p. 5, 772 So.2d at 99.
The issue for the trial court was whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. Despite the trial court's statement, we conclude that reasonable persons could arrive at a contrary verdict, as this jury did.
The jury was allowed to view and handle sticky-backs during the trial. In looking at them, the jury could decide for themselves whether the limitations of the producta one-inch square piece of plastic, with three channels on the top surface and an adhesive-backed foam pad on the back surfaceshould have been obvious to Excel and its employee, Philyaw, as well as to Kaiser, which inspected the work done by its electrical contractors.
It is reasonable for the jury to decide that a personin particular, a professional wiring installershould perceive the obvious limitations of the item. Further, it is reasonable for the jury to decide that Philyaw's actions demonstrated awareness of the risk.
Further, regarding the argument that T & B's failure to include a warning about temporary use versus permanent use violated the LPLA, the adequacy of any particular warning is a question for the jury. Reilly v. Dynamic Exploration, Inc., 571 So.2d 140, 145 (La.1990). The testimony by the Kaiser/AXA expert, Jerry Householder, and T & B's expert, Jerry Purswell, directly conflicted. Purswell compared the sticky-back to a nailanother simple fastening device that can be used in temporary or permanent settings, and which generally comes with no warnings. It was the jury's province to decide which witness's testimony to credit. A reasonable jury could have decided that a sticky-back, like a nail, does not need the kinds of warnings that Kaiser/AXA argues for.
Additional questions for the jury decision were proximate cause and allocation of fault. La.R.S. 9:2800.54 provides,
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
* * *
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57....
When there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder. Theriot v. Lasseigne, 93-2661, p. 5 (La.7/5/94), 640 So.2d 1305, 1310.
The jury here may reasonably have allocated fault according to the parties' control over, or the role played by, the *501 instrumentalities that caused the explosion. Kaiser (assigned 75% fault by the jury) controlled the entire plant, including the electrical system, the vessels that exploded, and the non-functioning pressure-relief systems that directly caused the explosion.
PCS (assigned 20% fault by the jury) erroneously programmed the Schweitzer relays, which was a direct cause of the plant-wide power failure. However, PCS's failure was an indirect, less proximate cause of the explosion compared to Kaiser's misconduct.
The jury allocated only 5% fault to Excel, and reasonably may have found that Excel's wiring in the switch house was an indirect cause of the power failure and that intervening, independent negligence by PCS was required to turn the electrical fault in Switch House 2 into a large-scale power failure, and that much greater intervening negligence by Kaiser was required to turn the power failure into an explosion.
Unlike Excel, T & B could not have known the risk created by the proximity between the CT leads and the high-voltage bus bars. Further, since Philyaw testified he never saw any of the warnings or instructions accompanying the stick-backs, the jury could reasonably find that any alleged deficiency in the warnings or instructions was not a proximate cause of any of the events.
Even when a plaintiff proves that the lack of an adequate warning or instruction rendered a product unreasonably dangerous, a presumption arises that the user would have read and heeded such admonitions. Bloxom v. Bloxom, 512 So.2d 839, 850 (La.1987). The presumption, may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances. Id.
Considering all the above factors, we conclude that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." Trunk, 04-181, p. 4, 885 So.2d at 537. Accordingly, we find the trial court erred in granting the motion for judgment notwithstanding the verdict.

New Trial
In granting the conditional motion for new trial, the trial court included the following written reasons within the judgment:
I have the right to grant a new trial under purely discretionary grounds under CCP art. 1973, which I would do if I did not grant the JNOV, or would do in the alternative. In retrospect, there were multiple occasions during the six weeks of trial when it may have been appropriate to grant some of the Motions for Mistrial that were orally argued. Virtually all of the lawyers made mistakes at one point or another during this over six week trial.
* * *
If the JNOV is overturned by the Court of Appeal, fundamental fairness, the difficulty in picking a jury that does not have pre-conceived ideas about Kaiser, and the errors and irregularities that occurred during this lengthy trial mandate a new trial.
I note that CCP art. 1813(E) also provides a potential basis for a new trial, as the special verdict form as completed by the jury contained irreconcilable answers.
I have the right to grant a new trial if the judgment is contrary to law and/or to evidence under CCP art. 1972. I would do so under this article as well. *502 Some of the reasoning for granting a new trial under CCP art. 1972 is out-lined by the reasons in support of the JNOV, and the other reasoning outlined above.
T & B contends the trial court erred by granting plaintiffs' alternative motion for a new trial in a new forum, because the jury's fair interpretation of the evidence precludes new trial under La.C.C.P. art. 1972(1) and new trial pursuant to La. C.C.P. art. 1973 is not warranted because the verdict is not a miscarriage of justice. Further, T & B asserts, there is no basis for a change of venue.
A party may join a motion for new trial with a motion for judgment notwithstanding the verdict, or may pray for a new trial in the alternative. La.C.C.P. art. 1811(A)(2). If the court grants the motion for judgment notwithstanding the verdict, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. La.C.C.P. art. 1811(C)(1). If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise. La.C.C.P. art. 1811(C)(2).
A motion for a new trial requires a less stringent test than for a judgment notwithstanding the verdict (JNOV), as such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84.
A conditional grant of a new trial is not to be used to give the losing party a second bite at the apple without facts supporting a miscarriage of justice that would otherwise occur. Joseph v. Broussard Rice Mill, Inc., 00-0628 (La.10/30/00), 772 So.2d 94.
In several recent cases, our supreme court has ruled that when a JNOV is reversed on determination that the jury's verdict was reasonable in light of the evidence presented, the conditional new trial also should be reversed.[8] We find that reasoning applicable here, and conclude the trial court abused its discretion in granting the conditional new trial.
Since we have determined the trial court erred in granting the conditional new trial, the issue of change of venue is moot. Accordingly, we need not address it.

DAMAGES
Our reversal of the JNOV also eliminates the trial court's award of damages to Kaiser; hence, we need not address T & B's assignment of error on this issue.

DECREE
For the foregoing reasons, the judgment of the district court is reversed and the jury verdict is reinstated. Costs of this appeal are assessed to the appellees, Kaiser and AXA.
REVERSED; VERDICT REINSTATED.
NOTES
[1] After consolidation the district court assigned the suits the master case name of In re: Gramercy Plant Explosion at Kaiser. When the case was lodged on appeal, pursuant to this Court's internal policy it was filed under the name of the first of the consolidated cases, Carl Bell v. Kaiser Aluminum, et al., No. 04-CA-1151 (23rd Judicial District Court No. 25,975). For uniformity of designation in the matter, however, we are ordering that the master case name be adopted as the name of the matter on this Court's records. The order is being issued in conjunction with release of this opinion.
[2] Most of the personal injury claimants were part of a class action, but others opted out of the class action to pursue their individual suits.
[3] Kaiser Aluminum v. Power & Control Systems, Inc, et al., No. 04-CA-1171 (23rd Judicial District Court No. 26,821).
[4] Terrence Hayes v. MEI Corporation, et al., No. 04-CA-1184 (23rd Judicial District Court No. 26,861).
[5] AXA Global Risks (U.K.), et al. v. Thomas & Betts Corporation, et al., No. 04-CA-1187 (23rd Judicial District Court No. 26,865). The other reinsurers collectively included under the designation "AXA" are Allianz Insurance Company; Certain Underwriters at Lloyd's, London, individually subscribing to certain facultative reinsurance contracts issued to Trochus Insurance Company, Ltd., Compagnie Transcontinentale De Reassurance, Houston Casualty Company, Lexington Insurance Company, Munich Reinsurance Company, National Union Fire Insurance Company, Qatar General Insurance and Reinsurance Company, Q.B.E. International Insurance, Ltd., Sorema Insurance Company, Swiss Reinsurance Company, Winterthur International Insurance Company, and Zurich Reinsurance Company.
[6] Kaiser went through bankruptcy during the course of this suit, and the bankruptcy court allowed AXA to be subrogated to all Kaiser's claims. Hence, they are for practical purposes one party, "Kaiser/AXA."
[7] Excel is also referred to as "Excel/MEI" because it either merged with or was bought by MEI.
[8] Trunk, 04-181, p. 11, 885 So.2d at 540 ("Because we have previously concluded that the jury's verdict was reasonable in light of the evidence presented, we find that plaintiff is not entitled to a new trial."); see also, VaSalle, 01-462, p. 18, 801 So.2d at 342; Davis v. Witt, 02-3102, p. 23, 851 So.2d at 1134 ("When any fair interpretation of the evidence supports the jury's verdict, the grant of a new trial must be reversed.").