ROBERT A. CHAISSON, Judge.
| ¡Jeanene and Charles Coulon appeal from a jury verdict awarding Mr. Coulon $150,000 in general damages in their medical malpractice claim against Terry G. Creel, M.D., and the Louisiana Patient’s Compensation Fund. For the following reasons, we affirm that judgment.
FACTS AND PROCEDURAL HISTORY
On January 18, 2007, at about 10:30 p.m., Charles Coulon, then 65 years old, suffered an ischemic stroke, or brain vessel blockage, while lying on his living room sofa. His wife heard a thump when he rolled onto the floor, which is where she found him. She called an ambulance, and he arrived at the hospital emergency room within 45 minutes of the incident.
Mr. Coulon was seen by Dr. Terry Creel, the emergency room physician. Dr. Creel’s notes indicate that he was familiar with Tissue Plasminogen Activator (t-PA), a drug that can promote blood flow in the brain by dissolving blood clots | -¡causing a blockage, as with ischemic strokes. His notes further show that he declined to use the drug because Mr. Coulon suffered trauma when he fell off the sofa, and one of the dangerous side effects of the drug is that it can promote bleeding if a patient has other injuries. By the next morning, when Mr. Coulon was seen by Dr. Donald Adams, a neurologist, it was Dr. Adams’ opinion that aside from supportive measures, there was no opportunity for therapeutic intervention. After several weeks of physical, occupational, and speech therapy, Mr. Coulon was discharged on January 23, 2007.
It was Dr. Creel’s decision not to administer t-PA in the emergency room that came to be the focal point of this medical malpractice action. The medical review panel exonerated Dr. Creel, and a jury trial was eventually held. During that trial, the Coulons presented the testimony of two experts who were of the opinion that t-PA should have been administered in the emergency room. Two defense experts *81 testified to the contrary. The jury found that Dr. Creel’s treatment fell below the appropriate standard of care in not administering t-PA, and thus deprived Mr. Coul-on of a chance for a better outcome. It awarded Mr. Coulon $150,000 in general damages. The Coulons urged a motion for judgment notwithstanding the verdict, or alternatively for a new trial. These motions were denied and this appeal followed.
DISCUSSION
Plaintiffs’ first assignment of error is that the general damage award is too low. The standard of appellate review of general damage awards is whether the trier of fact abused its much discretion in fixing the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). In Youn, the court explained that the role of the appellate court is not to decide what it considers an appropriate award, but rather whether the trier of fact abused its discretion. The court went on to state |4that an appellate court should rarely disturb such an award, and should only do so “when that award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances.” Id. at 1261.
Where there is an additional factor of loss of a chance for a better result, the proper analysis was set forth in Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. There, the facts were that because of a delay in performing a procedure, the plaintiff lost the chance to save his leg from amputation. The jury awarded $470,000 in general damages. The court noted that where the chance of survival (or in the present case, the chance for a better result) is less than fifty percent, the court may not award full damages for the loss. Rather, the factfinder must focus on the chance of a better result that has been lost, based on all evidence of record. Because the Graham jury award was for the loss of the leg, and because the evidence showed that had the procedure been done timely there was a twenty to thirty-three percent chance that the leg could have been saved, the court reduced the award to $140,000. The court finally noted that such awards can be tested on appeal by considering the percentage chances and the losses incurred by the victim, and any other relevant evidence. Id. at 373, citing Smith v. State, Dept. of Health and Hosp., 95-0038 (La.6/25/96), 676 So.2d 543.
In the case before us, the evidence adduced at trial showed that Mr. Coulon, although retired, had an active life which included fishing and flying. After the stroke, he was left with the inability to talk and his right arm and leg are basically useless. He is confined to a wheel chair, but is still able to take care of basic needs using his left arm. There is no expectation that his condition will ever improve significantly.
| sDr. Christopher Lewandowski, an expert in the field of emergency medicine and the treatment of strokes, and Dr. Steven Levine, a neurologist, testified for the Coulons. Dr. Lewandowski was of the opinion that the failure to administer t-PA fell below the proper standard of care. He further testified that although it could not be said with any certainty what would have been the outcome had Mr. Coulon been given the t-PA, he cited a study performed by the National Institute of Neurological Disorders and Stroke (NINDS) which indicated the following: patients receiving the drug showed a full recovery rate 12-14% better than those not receiving it, and similarly showed about a 30% chance of a better outcome in regard to speaking and walking than the control group receiving placebos. Dr. Levine testified similarly *82 that the NINDS study showed a 12-14% chance of full recovery, and about a one-third chance of a better outcome, which might have included Mr. Coulon being able to walk and speak better.
Defendants’ experts were Dr. Jerome Hoffman, and Dr. Joseph Litner, both emergency room physicians, and both of whom were aware of the NINDS study. Dr. Hoffman, while agreeing with the one-third and 12-14% figures, was of the further opinion that the reason for the discrepancy was that the patients who improved were not as ill as the other group. He did not think that Mr. Coulon would have received any benefit from the treatment. Dr. Litner agreed with the testimony of Dr. Hoffman, and added that in his opinion, the vast majority of patients receiving the drug showed no change, and that a significant portion of them died.
The evidence most in favor of Mr. Coul-on is that he suffered a one-third loss of a chance for a better result, and a one-eighth chance for a full recovery. While we are mindful that these percentages are not to be applied mechanically, they are nonetheless pertinent in assessing the jury award for reasonableness. Graham, | Bsupra,: Smith, supra. Here, the jury found that $150,000 was warranted in general damages. In Graham, the court faced a situation in which the jury awarded $470,000 for loss of a leg; the court nonetheless used a figure in evidence of some 30 percent to reduce the award to $140,000. Here, the situation is the reverse in that the jury might have surmised that total damages came to $450,000, reduced to one-third for loss of a better outcome, or indeed came to $1,200,000, reduced to one-eighth for loss of a chance at full recovery. In either case, we are unable to articulate reasons why the actual award was an abuse of the jury’s much discretion in that it is too low. The entire record shows that this amount was within the reasonable discretion of the fact finder, and as such this court must affirm that award.
The Coulons’ second and third assignments of error urge that: 1) it was error to deny the motion for judgment notwithstanding the verdict, and alternatively, 2) it was error to deny the motion for a new trial. The procedure used in these trial court motions is provided in La. C.C.P. art. 1811. This procedure was the subject of this court’s opinion in In re Gramercy Plant Explosion at Kaiser, 04-1191 (La.App. 5 Cir. 3/28/06), 927 So.2d 492, writ denied 06-1003 (La.6/14/06), 929 So.2d 1271. There, the trial court granted a motion for a judgment notwithstanding the verdict, and alternatively conditionally granted a new trial in the event that the JNOV was set aside on appeal. The JNOV was in fact set aside on appeal. The court explained that the test for granting a JNOV was whether the evidence pointed so strongly in favor of the moving party that reasonable fact finders could not have reached the verdict at issue. Id. at 498, citing Trunk v. Medical Center of Louisiana at New Orleans, 04-0181 (La.10/19/04), 885 So.2d 534. In reversing the JNOV, the court found that there was a reasonable basis for the jury verdict and therefore that the JNOV was an abuse of the trial judge’s discretion. On the 17question of the conditional granting of the new trial, the court observed that the test for a new trial is whether there has been a miscarriage of justice. It noted that our supreme court has held that when a JNOV is reversed on a determination that the jury verdict is reasonable, that same determination should be applied to reverse a ruling that a conditional new trial is warranted. Id. at 502, citing Trunk.
In the present case, we have determined that the jury award was a reasonable exer *83 cise of the jury’s much discretion. Because of that determination of reasonableness, both the motion for JNOV, and the alternative motion for a new trial were properly denied.
DECREE
For the foregoing reasons, the judgment of the trial court is hereby affirmed.

AFFIRMED.