STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JUNE COCKERHAM, ET AL.

VERSUS

LASALLE NURSING HOME, INC., ET AL.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 30942
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

AFFIRMED.

George A. Flournoy
Flournoy & Doggett
Post Office Box 1270
Alexandria, LA   71309-1270
(318) 487-9858
COUNSEL FOR PLAINTIFFS/APPELLEES:
    June Cockerham
    Jessica Cockerham
    Justin Dewayne Cockerham

Gregory Engelsman
Bolen, Parker & Brenner
Post Office Box 11590
Alexandria, LA   71315-1590
(318) 445-8236
COUNSEL FOR DEFENDANTS/APPELLANTS:
    LaSalle Nursing Home, Inc.
    GuideOne Insurance Company

AMY, Judge.

The plaintiffs, the wife and children of the decedent, filed suit alleging that the decedent's death was related to the improper replacement of a gastric tube. A jury found the defendant nursing home and a hospital where treatment was rendered to be liable and equally at fault. However, the jury did not award damages for the decedent's survival action or for his medical/funeral expenses. The jury further found a violation of the Nursing Home Residents' Bill of Rights, but did not award any attorney's fees. Acting upon a motion for JNOV, the trial court awarded damages for the survival action, medical expenses/funeral costs, and attorney's fees. The defendant nursing home appeals. The plaintiff has answered the appeal. For the following reasons, we affirm.

### Factual and Procedural Background

Justin Cockerham, who was forty years of age at the time of the events at issue, was a resident of LaSalle Nursing Home where he resided due to debilitating injuries sustained in a 1997 car accident. At trial, Mr. Cockerham was described as being severely impaired in all areas of mobility. Testimony further indicated that his ability to communicate was limited to eye blinking and hand squeezing. Due to his condition, Mr. Cockerham received nutrition and medication through a gastric tube. On August 22, 1998, the gastric tube became dislodged. Mr. Cockerham was transferred to the emergency room of the LaSalle General Hospital for replacement of the tube.

The record indicates that Kathy Lambeth, a Registered Nurse at the hospital, undertook replacement of the tube. She admits that the replacement of the tube was difficult, but stated that she informed nursing home personnel of the difficulties. She further explained that she sought verification of the placement by emergency room

physician Dr. Jed Woodard. Ms. Lambeth explained that Dr. Woodard responded to her call for approval, but merely observed Mr. Cockerham from the door of the room rather than pursuing further methods of verification. The extent of Dr. Woodard's consideration of the replaced gastric tube was disputed.

Mr. Cockerham was returned to the nursing home after the tube was replaced. Kathy King, an LPN attending to Mr. Cockerham at the nursing home, resumed the continuous feeding through the gastric tube. According to Ms. King's testimony, she had been informed of the difficulty in reinserting the tube. However, she did not verify placement of the gastric tube before resuming the feeding. She explained that there was no reason to check on the patency of the gastric tube and that she had not been trained to do so.

Later, during the afternoon of August 22, Barbara Lemons, an LPN working the evening shift at the nursing home, attempted to administer Mr. Cockerham's medication through the gastric tube. Again, the placement of the tube was not verified. However, she explained that, when the medications did not flow through the tube properly, she contacted the emergency room due to her concern over the correct placement of the gastric tube. The timing of any such contact and the subsequent transfer to the emergency room was at issue at trial.

After Mr. Cockerham was again transferred to the emergency room, testing was ordered and the misplacement of the gastric tube was discovered. The plaintiffs allege that, during the period between the two visits to the emergency room, the liquid feeding product administered to Mr. Cockerham was infused into the abdominal wall. Mr. Cockerham was transferred to St. Frances Cabrini Hospital (hereinafter "Cabrini"). While at Cabrini, Mr. Cockerham came under the care of Dr. Bruce

2

Barton, an internist. Dr. Barton explained that further testing performed at Cabrini again confirmed that the gastric tube had been misplaced in the anterior abdominal wall. Dr. Barton testified that by the time he examined Mr. Cockerham on August 23, pneumonia and sepsis had developed. He explained that Mr. Cockerham was unable to recover from the infection. On August 27, and following discussion with Dr. Barton, Mr. Cockerham's family decided that no further extraordinary measures were to be taken. Mr. Cockerham died on September 3, 1998.

Mr. Cockerham's wife, June Cockerham, filed the instant matter seeking damages related to his death. She did so individually and on behalf of the couple's minor children, Jessica Cockerham and Justin Dewayne Cockerham. The plaintiffs named LaSalle Nursing Home, LaSalle General Hospital, Kathy Lambeth, and Dr. Woodard as defendants, among others. Prior to trial and, pursuant to a settlement, Dr. Woodard was dismissed. LaSalle General Hospital was ultimately dismissed as well. The matter proceeded to trial against the nursing home.

A jury determined that LaSalle Nursing Home, Inc., through its agents/employees, breached the applicable standard of care in the treatment of Mr. Cockerham and that the breach "proximately caused plaintiffs to suffer damages[.]" The jury found the same with regard to Ms. Lambeth, an employee of LaSalle General Hospital. The nursing home and hospital were each apportioned fifty percent of the fault. The jury did not award damages for Mr. Cockerham's pre-death pain and/or fright, his medical expenses, or those related to his funeral and burial. The jury awarded a total of $50,000.00 in general damages to Ms. Cockerham and $100,000.00 to each of the Cockerham children. Although the jury found that the nursing home

3

violated the Nursing Home Residents' Bill of Rights, it did not award attorney's fees related to that violation.

The trial court granted the plaintiff's motion for judgment notwithstanding the verdict, in part, and awarded $22,250.75 for medical expenses, $10,010.84 for funeral expenses, and $432,000.00 for Mr. Cockerham's pre-death pain and fright. The trial court recognized that each of these awards is reduced by fifty percent due to the apportionment of fault. Further, the trial court awarded $59,521.80 in attorney's fees and $9,331.77 as costs of the action. Other aspects of the plaintiffs' motion for JNOV and their motion for new trial and/or additur were denied.

The defendant appeals, specifying the following as error:

1) The Trial Court erred at Trial by allowing numerous items of physical evidence to be introduced, that were disclosed for the first time in the Exhibit List provided on the morning of Jury Trial.

2) The Trial Court erred at Trial by allowing the Medical Review Panel opinion to be redacted to eliminate the panel's opinion regarding causation.

3) The Trial Judge erred in not allowing the Jury to consider the fault of the Emergency Room physician, which was plain, open and obvious.

4) The Jury erred in assigning fifty (50%) percent of fault to LaSalle Nursing Home when but for the negligence of the hospital the incident would not have occurred.

5) The Trial Court erred in granting a JNOV to plaintiff and overturning the Jury's decision that no survival action damages were to be awarded.

6) The Trial Court erred in awarding an excessive amount of survival action damages when the Judge granted a JNOV.

7) The Trial Court erred in awarding an excessive amount of attorney's fees when the Judge granted a JNOV.

4

The plaintiffs have answered the appeal, seeking: "(1) a reduction in the percentage of fault attributable to Kathy Lambeth and/or Lasalle General Hospital and (2) an increase in the award of general damages to June Cockerham."

**Discussion**

*Introduction of Evidence*

The defendant first questions the introduction of a number of pieces of evidence. While the defendant does not dispute that it had prior notice of the existence of the evidence, it contends that it had no prior notice that the evidence was to be used at trial. The contested evidence included family photographs, a gastric tube illustration, an ambulance record, and various nursing home policies. A redacted version of the Medical Review Panel's opinion, a statement from Dr. Woodard, and an attorney contract were also at issue. The plaintiffs asserted that the particular exhibits had been identified in an updated exhibit list forwarded to counsel the weekend prior to trial.

In *McIntosh v. McElveen*, 04-1041, pp. 9-10 (La.App. 3 Cir. 2/2/05), 893 So.2d 986, 994, *writ denied*, 05-0528 (La. 4/29/05), 901 So.2d 1069, a panel of this court observed that a "trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." In ruling, the trial court noted that no pre-trial schedule was in place due to a number of pre-trial occurrences which had rendered establishing a schedule difficult. The trial court additionally observed that the defendant failed to prove that it was surprised or unfairly prejudiced by the introduction of the evidence. The trial court remarked that it did not "see how [the defendant] could be surprised by anything that's in your control[.]" The trial court further indicated that it would

5

provide the defendant with time to produce any further evidence it needed to counter those introduced by the plaintiffs.

The record does not demonstrate abuse of the trial court's discretion in permitting the evidence. As noted by the trial court, the defendant was aware of the existence of the evidence and failed to establish that it was unfairly prejudiced by its introduction. It offered no explanation as to how it could have or would have countered the exhibits offered.

This assignment lacks merit.

*Redaction of the Medical Review Panel Opinion*

The opinion rendered by the Medical Review Panel revealed that the panel found that "the evidence does not support the conclusion that the defendants failed to comply with the appropriate standard of care as alleged in the complaint[.]" Having made this determination, the panel's opinion continued, stating: "nor does the evidence support the conclusion that the defendants' actions were causative, in whole or in part, of the damages alleged to have been sustained herein." The plaintiffs filed a motion immediately prior to the start of trial arguing that this latter statement exceeded the statutory authority conveyed to the panel and that, accordingly, the statement must be redacted. The trial court granted the motion. The defendant argues here that there is no statutory or jurisprudential support for the trial court's determination.

Louisiana Revised Statutes 40:1299.39.1 provides, in part:

G. The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint. After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty days, render one or more of the

6

following expert opinions which shall be in writing and signed by the panelists, together with written reasons supporting each opinion, which shall constitute part of the report:

(1)     The evidence does not support the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2)     The evidence does support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint. *If such opinion is rendered, then an opinion on whether the conduct complained of was or was not, in fact, a medical cause of the resultant damages shall also be rendered.* If an opinion is rendered that such conduct was, in fact, a medical cause of the resultant damages, then an opinion shall be rendered on whether the plaintiff suffered:

(a)     Any disability and the extent and duration of the disability.

(b)     Any permanent impairment and the percentage of the impairment.

(Emphasis added.) *See also* La.R.S. 40:1299.47(G).[1]

---

[1]  The present version of La.R.S. 40:1299.47(G), which was amended in 2003, provides:

G.     The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care.  After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty days, render one or more of the following expert opinions, which shall be in writing and signed by the panelists, together with written reasons for their conclusions:

(1)     The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2)     The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

(3)     That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.

(4)     *When Paragraph (1) of this subsection is answered in the affirmative, that the conduct complained of was or was not a factor of the resultant damages.*  If such conduct was a factor, whether the plaintiff suffered:  (a) any disability and the extent and duration of the disability, and (b) any permanent impairment and the percentage of the impairment.

(Emphasis added.)

7

In ruling that the Medical Review Panel opinion must be redacted to remove the finding as to causation, the trial court referenced the wording of the related statutory authority. We find no error in the trial court's determination. Rather, La.R.S. 40:1299.39.1(G)(2) indicates that it is only upon a finding that the health care provider deviated from the standard of care, that the panel is to reach the issue of causation. Since the panel concluded that there was no deviation in the standard of care, La.R.S. 40:1299.39.1(G)(1) required that its analysis end with that determination. The trial court did not err in ordering that the opinion be redacted.

This assignment lacks merit.

*Fault of Emergency Room Physician*

The defendant also questions the trial court's determination that, based on the evidence presented, the jury would be unable to consider whether Dr. Woodard was negligent and, in turn, include him in the apportionment of fault.

Louisiana Revised Statutes 9:2794 sets forth the burden of proof required in a medical malpractice case, requiring in part:

> A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., . . . the plaintiff shall have the burden of proving:
>
> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

8

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Since the defendant was seeking a determination that Dr. Woodard was negligent in his treatment of Mr. Cockerham, it was the defendant's burden of establishing the elements of La.R.S. 9:2794. The trial court concluded that it failed to do so, limiting the jury's consideration of Dr. Woodard's negligence.

Having reviewed the evidence, we find no error in the trial court's determination that the defendant failed to establish evidence adequate to support a determination that Dr. Woodard breached the applicable standard of care. In short, the defendant failed to present expert testimony establishing the standard of care, and breach thereof, applicable to an emergency room physician in the same locality at that time. Rather, the defendant relied upon its assertion that Dr. Woodard's conduct constituted an obviously careless act which did not require the testimony of an expert.

In support of its position, the defendant cites *Pfiffner v. Correa*, 94-0924, p. 9 (La. 10/17/94), 643 So.2d 1228, 1233, wherein the supreme court noted that expert testimony in a medical malpractice case is "not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence." The court further commented that:

> Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician's fault.

*Id*. at 1234.

9

The trial court was not required to find that the alleged negligence of Dr. Woodard in this case was so obvious as to fit within this exception. Rather, the record supports a determination that, based upon the facts presented and the testimony developed, the degree to which Dr. Woodard understood Ms. Lambeth's difficulty in replacing the tube and the extent to which he was required to respond in order to satisfy the standard of care required of him remained uncertain.

This assignment lacks merit.

*Apportionment of Fault*

The jury apportioned the fault equally between the defendant and LaSalle General Hospital. The defendant contends that it had a policy against changing gastric tubes in the nursing home and that the hospital was in a better position to not only re-insert the tube, but to check for its patency as well. In light of these factors, the defendant contends, its fifty percent assignment of fault is excessive. Conversely, in their answer to the appeal, the plaintiffs assert that the negligence of the nursing home should be increased.

Louisiana Civil Code art. 2323(A) provides:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

Both parties reference the factors established in the jurisprudence for consideration in apportionment of fault. These factors were set forth by the supreme

10

court in *Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985), wherein the court stated that:

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

We are mindful, however, that apportionment of fault is a finding of fact and is, therefore, reviewed pursuant to the manifest error-clearly wrong standard of review. *Broussard v. Family Dollar Store*, 05-645 (La.App. 3 Cir. 12/30/05), 918 So.2d 1148.

We find no manifest error in the jury's equal apportionment of fault. Rather, the evidence supports the determination that the hospital, through its employee, Ms. Lambeth, was negligent insofar as the tube was replaced incorrectly and that the correctness of the placement was not more fully investigated by Ms. Lambeth. The replacement was admittedly difficult. With regard to the nursing home, the jury was free to conclude that it was negligent in either failing to have an adequately understood policy of ensuring placement of the gastric tube prior to its use for feeding or in failing to return Mr. Cockerham to the emergency room with the required promptness once the problem with the tube was suspected by Ms. Lemons. The circumstances of this case, when considered in light of the factors set forth in *Watson*, do not indicate that either party's conduct was such that reapportionment is required. Rather, in considering the respective fault and, in determining in which way the parties were negligent, certain credibility determinations and factual findings were required. These determinations are best left to the trier of fact.

These assignments lack merit.

11

*Survival Action - JNOV*

The jury concluded that the negligence of the nursing home and the hospital, through its employee, proximately caused the plaintiffs to suffer damages. However, no damages were awarded for Mr. Cockerham's survival action for his "pre-death pain and/or fright." The trial court subsequently granted the plaintiffs' motion for JNOV in this regard and awarded damages for the survival action. In his brief to this court, the defendant suggests that the record supports the jury's determination and, accordingly, the trial court erred in substituting its judgment for that of the jury. In particular, the defendant asserts in its brief that:

> While the plaintiffs' own self-serving testimony indicated signs of pain and problems, defendant submitted deposition testimony of Dr. Linda Hamner, who had examined Mr. Cockerham a few months before the incident. Dr. Hamner's assessment of Mr. Cockerham demonstrated no real cognition on his part. [] Further, it was undisputed that Mr. Cockerham was a brain damaged quadriplegic, limiting any sensation of pain in most areas of his body. Essentially the Jury was provided both with evidence that would allow a decision for and against the proposition of conscious pain and suffering. They chose against making any award, which was well within their province.

In *Trunk v. Medical Center of Louisiana at New Orleans*, 04-0181, pp. 4-5 (La. 10/19/04), 885 So.2d 534, 537, the supreme court explained that:

> [A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

12

On review, an appellate court must use the same criteria as the trial court and determine whether the trial court erred in granting the motion for JNOV. *Joseph v. Broussard Rice Mill, Inc.*, 00-0628 (La.10/30/00), 772 So.2d 94. Thus, the reviewing court must consider whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id.* at 99. If reasonable persons might differ in their conclusion, then the entry of the JNOV was in error and the jury's verdict should be reinstated. *Id.*

The evidence in the record confirms the correctness of the trial court's entry of a JNOV on the issue of survival damages. The jury established the nursing home and the hospital's liability. The plaintiffs presented evidence indicating that, during the period from August 22 through September 3, Mr. Cockerham experienced pain and demonstrated fear. Ms. Cockerham testified that she traveled to the emergency room when Mr. Cockerham was returned for investigation of the misplaced tube. She explained that he appeared to be in pain and frightened. She described him as having a frightened expression. She stated that Mr. Cockerham was sweating and that his eyes became "real big." Ms. Cockerham testified that "he squeezed my hand and blinked his eyes when I asked if he was hurting[.]"

The plaintiffs also presented testimony from medical personnel and medical records indicating that Mr. Cockerham was in pain. Ms. Lemons explained as follows regarding Mr. Cockerham's reaction to her attempt to administer medication through the gastric tube:

> Q    And when you did that, Ms. Lemons, when you tried to force it in with a syringe, what did Justin do?
>
> A    His eyes got - he kind of - his eyes got big. He made a face.

13

Q      You could tell, unintentionally, you had hurt him.  He was hurting.  You could tell that.  Couldn't you?

A      I could tell he was in pain.  Yeah.  With me trying to put it in.

Q      And in fact, you asked him - he could understand what you asked him things.  You asked, Mr. Cockerham, are you - does this hurt you?  Are you hurting?

A      Yes, sir.

Q      And what did he tell you?

A      He blinked his eyes.

Q      And -

A      That's supposed to be yes.  That's the way he communicated with us.

Q      So, he definitely understood what you were asking him.  Didn't he?

A      Yes.

Q      And as another way you could tell, you could tell - I want you to tell the jury that you knew Justin was in pain, because what did he do with that G-tube when you used the syringe to inject the medication?

A      What did he do?

Q      Yes, ma'am.

A      What did he do with the G-tube?

Q      Do you recall in your deposition -

A      He said he kind of - he kind of flinched.  He moved his arm a little bit.

Q      He tried to grabbed at it.  Didn't he?

A      Yes, sir.

Dr. Barton testified that his examination of Mr. Cockerham at Cabrini revealed that he "was very tender over the area where the tube had been - by the time I saw him the

14

tube, of course, had been removed. He was tender over that area. He flinched to pain when you pressed on that area." Mr. Cockerham's medical records also indicate that medication for pain was administered throughout the period at issue, including morphine. Dr. Barton explained that the decision to administer morphine "was made after some deterioration of his condition and discussion with the family, that their primary objection was for him to be as comfortable as possible and that's when that was instituted." Cabrini's medical records also lists a medication for anxiety.

In support of its position that the jury could have found that Mr. Cockerham did not experience pain in his final days, the defendant points to the testimony of Dr. Linda Hamner, a physiatrist who evaluated Mr. Cockerham in May 1998 following his car accident. While Dr. Hammer testified as to Mr. Cockerham's placement on a cognitive scale at that time and his inability to react to commands, she did not testify that Mr. Cockerham was unable to feel pain. In fact, she discussed her determination that Mr. Cockerham was a "Level 3" on the Ranchos Los Amigos Cognitive Scale as follows: "By definition, your Level Three on the Coma Scale, then the patient may respond to strong light, they may blink, they may turn away from sound, or *respond to some physical kind of discomfort*." (Emphasis added). In short, the record contains evidence that Mr. Cockerham demonstrated pain. It is absent evidence supporting a determination that he did not experience pain as a result of the defendant's negligence.

This assignment lacks merit.

*Survival Action - Quantum*

The defendant alternatively questions the quantum of the survival action awarded for Mr. Cockerham's pain and suffering. It again references Mr.

Cockerham's condition prior to the attempted replacement of the gastric tube. The defendant references lower figures awarded as damages for a survival action in cases it contends are similar in nature to the present matter.

After a JNOV is granted on the issue of damages, the trial court conducts an independent assessment of damages as the trier of fact. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98. That decision, which becomes the judgment of the trial court, is reviewed by the appellate court pursuant to the abuse of discretion standard of review. *Id.*

Having reviewed the trial court's award for Mr. Cockerham's pre-death pain and fright, we find no abuse of the trial court's discretion. Again, the record lacks evidence indicating that the debilitating consequences of the car accident diminished his appreciation of pain. Rather, the medical records and testimony support the determination that he experienced pain and fright. During the thirteen-day period between the improper feeding and his ultimate death from pneumonia, Mr. Cockerham required pain medication and ice blankets to control his high fever. Considering these factors, we conclude that the trial court's award is within the discretion accorded it by law and well-settled principles of judicial review. As comparison to other reported awards for similar injuries is only made in the event that the trial court's discretion is abused, we do not do so in this case. *See Cone v. National Emergency Services, Inc.*, 99-0934 (La. 10/29/99), 747 So.2d 1085.

This assignment lacks merit.

*Attorney's Fees - Quantum*

The jury found that the defendant violated the Nursing Home Residents' Bill of Rights, *see* La.R.S. 40:2010.8, but did not award attorney's fees for that violation.

The trial court, observing that the award of attorney's fees is mandatory under La.R.S. 40:2010.9, awarded attorney's fees in the amount of $59,521.80. This figure is one-sixth of the total recovered damages and is reflective of the plaintiffs' contingency contract with their attorney. The trial court reduced the contingency contract, which was for one-third of the recovered amount, to reflect the apportionment of fault. The defendant contends on appeal that the award is excessive as the suit was also one for medical malpractice against a number of health care providers.

At the time of the events at issue, La.R.S. 40:2010.9(A) provided as follows with regard to a violation of the Nursing Home Residents' Bill of Rights:

> Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. . . . *Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees*, costs of the action, and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.

(Emphasis added.) As far as determining the "reasonableness" of attorney's fees, the supreme court has set forth the following factors:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Smith v. State, Dept. of Transp. & Development*, 04-1317, p. 18 (La. 3/11/05), 899 So.2d 516, 528.

The record reveals no abuse of discretion in the trial court's award of attorney's fees. Here, the plaintiffs' attorney obtained a favorable result for his client, assumed responsibility for investigating and pursuing the litigation, and obviously prepared

17

extensively for a multi-day trial where he ably represented his clients. While a portion of this case involved other defendants and claims which arose from actions outside of the nursing home, the facts and issues of this case were intertwined and required much of the same evidence and preparation. In sum, the award is a reasonable one and was within the court's discretion.

This assignment lacks merit.

*Award to Ms. Cockerham - Quantum*

Finally, in its answer to the appeal, the plaintiffs assert that the jury's $50,000.00 award to Ms. Cockerham for her loss of love and affection and mental anguish is abusively low. The plaintiffs point to Ms. Cockerham's devotion to her husband during their marriage and her attention to his needs during the hospital stay related to this case. The plaintiffs also reference Ms. Cockerham's testimony regarding the effects of the loss of her husband. Although the facts pointed out by the plaintiffs regarding Ms. Cockerham's loss are unquestioned, we do not find that the award in this regard was an abuse of the jury's discretion.

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the judgment below is affirmed. All costs of this proceeding are assessed seventy-five percent to the appellant, LaSalle Nursing Home, Inc., and twenty-five percent to the appellee, June Cockerham.

**AFFIRMED.**

18