| TIMOTHY BLAKES | * | NO. 2021-CA-0572 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| HALLMARK SPECIALTY | * | |
| INSURANCE COMPANY AND | | FOURTH CIRCUIT |
| GERMAINE DAVIS | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-07507, DIVISION "F-14"
Honorable Jennifer M. Medley
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase,
Judge Pro Tempore Lynn M. Luker)

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS**

Patrick G. Kehoe, Jr.
PATRICK G. KEHOE, JR., APLC
3524 Canal Street
New Orleans, LA 70119

Warren A. Forstall, Jr.
LAW OFFICES OF WARREN A. FORSTALL, JR.
320 North Carrollton Avenue
Suite 200
New Orleans, LA 70119


COUNSEL FOR PLAINTIFF/APPELLANT


Robert E. Kerrigan, Jr.
Geoffrey A. Mitchell
Raymond C. Lewis
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, LA 70130

Shaundra M. Schudmak
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street
Suite 2775
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**JUNE 15, 2022**

This is a personal injury action arising from a motor vehicle collision. Plaintiff/appellant Timothy Blakes (hereinafter "Mr. Blakes") appeals the August 2, 2021 judgment of the trial court, denying his motion for judgment notwithstanding the verdict (hereinafter "JNOV") and request for additur. After consideration of the record before this Court and the applicable law, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

On January 19, 2017, Mr. Blakes, a professional truck driver, was involved in an accident with defendant/appellee Germaine Davis (hereinafter "Mr. Davis"). Mr. Blakes asserts that he suffered injuries to his neck, back, and left hip. In August of 2018, a neurosurgeon, Dr. Bradley Bartholomew, performed a cervical fusion in an attempt to alleviate the pain to Mr. Blakes' neck. Several months later, Mr. Blakes began conservative treatment for his left hip pain, which also included cortisone injections by an orthopedist, Dr. Robert Bostick. However, Mr. Blakes maintains that his left hip pain continued and Dr. Bostick ultimately referred him to Dr. Wesley Clark, an orthopedic surgeon, who performed a total left hip replacement in September of 2019.

Mr. Blakes filed a petition for damages on August 3, 2017 against Mr. Davis and defendant/appellee Hallmark Specialty Insurance Company, Mr. Davis' insurer.[1] Mr. Blakes' suit proceeded to a jury trial on April 20, 2021. The parties stipulated to liability for the accident, however, the medical causation and damages

---

[1] Mr. Blakes initially also sued his own uninsured/underinsured motorist insurer, Northland Insurance Company, but dismissed it from this case on September 13, 2018. In a first supplemental and amending petition, Gateway Enterprises, II, LLC, Mr. Davis' employer, was added as a defendant.

1

remained contested. At the conclusion of a three-day trial, the jury returned a verdict in favor of Mr. Blakes, awarding him the following damages:

| | |
|---|---|
| Past medical expenses: | $263,000.00 |
| Past lost wages: | $20,000.00 |
| Past, present and future physical pain and suffering: | $50,000.00 |
| Past, present and future mental anguish and emotional upset: | $50,000.00 |
| Disability and loss of enjoyment of life: | $80,000.00 |

The trial court reduced the jury's verdict to judgment on May 19, 2021.

On May 13, 2021, Mr. Blakes filed a motion for JNOV and request for additur. Mr. Blakes' JNOV and additur related only to the jury's award for past, present and future physical pain and suffering. He asserted that $50,000.00 was inadequate considering the evidence presented to the jury as to the severity of his injuries, extent of his surgeries, and Dr. Bartholomew's opinion that he would suffer with pain for the rest of his life. On August 3, 2021, the trial court signed a judgment denying the motion for JNOV and additur. This appeal followed.

## DISCUSSION

When an appellate court reviews a trial court's determination to grant or deny a JNOV, it must first determine whether the trial court erred by using the same criteria as the district judge in deciding the outcome of the motion. *Trunk v. Med. Ctr. of Louisiana at New Orleans,* 2004-0181, p. 5 (La. 10/19/04), 885 So.2d 534, 537. In addressing this issue, a manifest error standard of review is applied. *Fireman's Fund Ins. Co. v. R.S. Homes, LLC,* 2019-0621, p. 4 (La.App. 4 Cir. 3/25/20), 294 So.3d 54, 59 (citation omitted).

2

In his sole assignment of error, Mr. Blakes asserts an award of $50,000.00 for past, present and future physical pain and suffering is unreasonable. As such, he maintains that the trial court should have granted his motion for JNOV and additur and increased the jury's award for past, present and future physical pain and suffering from $50,000.00 to $450,000.00.

In *Davis v. Wal-Mart Stores, Inc.,* 2000-0445, p. 4 (La. 11/28/00), 774 So.2d 84, 89, our Louisiana Supreme Court set forth the standard for JNOV, stating that it is warranted when the facts and inferences are so strongly and overwhelmingly in the favor of one party that the court believes reasonable jurors could not have arrived at a contrary verdict. "The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover." *Id.* (citations omitted). If evidence opposed to the motion exists which is of such quality and weight that reasonable people might reach different conclusions in the exercise of impartial judgment, the motion should be denied. *Id.* However, the Supreme Court warned that in making this determination, the trial court should not evaluate the credibility of the witnesses, and in addition, all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Id.*

When considering a motion for JNOV, a trial court may not weigh evidence, substitute its judgment of facts for that of the jury, or make a determination as to the credibility of witnesses. *Stamps v. Dunham,* 2007-0095, p. 6 (La.App. 4 Cir. 9/19/07), 968 So.2d 739, 744. The court should consider all the evidence, not just that supporting the non-mover's case. *Id.* However, it should give the non-mover the benefit of every legitimate and reasonable inference which can be drawn from

3

the evidence by the jury. *Id.* This stringent test is required because a JNOV may deprive the parties of their right to have all disputed issues resolved by the jury. *Martin v. Heritage Manor S. Nursing Home,* 2000-1023, pp. 4-5 (La. 4/3/01), 784 So.2d 627, 631-632.[2] "The JNOV strict criteria is predicated on the rule that 'when there is a jury, the jury is the trier of fact.'" *Smith v. State. Dep't of Transp. & Dev.,* 2004-1317, pp. 12-13 (La. 3/11/05), 899 So.2d 516, 525 (quoting *Trunk, supra*). In addition, "[a] judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law." *Plaquemines Par. Gov't v. Getty Oil Co.,* 1995-2452, p. 6 (La. 5/21/96), 673 So.2d 1002, 1006.

This Court, in reviewing a JNOV, must utilize the same criteria as the trial court in deciding whether the motion was properly granted or denied. *See Trunk, supra.* Thus, we must view the testimony in the light most favorable to the opposing party and resolve all inferences in its favor without judging credibility. At trial and in this Court, Mr. Blakes argues that the defendants attempted "to confuse" the jury by referencing past injuries which had resolved prior to the January 2017 accident. However, we note that the trial court properly instructed the jurors as to the well-settled principle that a tortfeasor takes his victim as he finds him, and when a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. *Guillory v. Lee*, 2009-0075, p. 26-27 (La. 6/26/09), 16 So.3d 1104, 1124. Thus, the jury was well aware that if there was any aggravation of pre-existing injuries, defendants were responsible for compensating Mr. Blakes.

---

[2] In contrast, granting a motion for new trial results only in another trial. *Martin,* 2000-1023, p. 4, 784 So.2d at 632.

The parties stipulated to liability; thus, the only issue before the trier of fact was medical causation and damages. The defense's case in chief focused on mitigating the extent of Mr. Blakes' injuries from the January 2017 accident and highlighting his pre-existing injuries. In its reasons for judgment denying the JNOV, the trial court stated it did not find that the evidence presented at trial pointed so strongly in favor of Mr. Blakes that a reasonable jury would have reached a different conclusion regarding an award for past, present and future physical pain and suffering. The trial court found that when considering all the evidence presented, the jury's award of $50,000.00 for past, present and future physical pain and suffering was reasonable. Applying the established JNOV principles, we now consider the evidence presented to the jury to determine whether the trial court erred in denying Mr. Blakes' motion for JNOV.

**Testimony of Mr. Blakes**

Mr. Blakes was the sole testifying fact witness regarding his injuries and pain and suffering. He testified that he sustained injuries to his back, neck, and left hip as a result of the January 2017 accident. Mr. Blakes testified that before the accident he had no significant issues with his back, neck, and left hip, although he did occasionally have pain in his hip which he successfully treated with ibuprofen. However, he contends that immediately after the accident his entire left side hurt, which eventually resulted in pain to his left hip, neck, and lower back. Mr. Blakes testified that his sleep was impacted and physical therapy did not relieve his pain. Ultimately, he was referred to Dr. Bartholomew, who recommended surgery to both his neck and back. He decided to undergo a cervical fusion, which he stated was successful. However, Mr. Blakes chose not to undergo back surgery,

5

testifying that he feared a surgery on his back because his mother died following a back surgery.

As to Mr. Blakes' hip pain, he was eventually referred to Dr. Clark, who recommended a total hip replacement since he continued to suffer ongoing hip pain. Mr. Blakes agreed to undergo a total hip replacement on September 25, 2019, which resulted in maximum medical improvement to his left hip. As of the date of trial, all of his injuries were resolved except for his back, which remains problematic. Mr. Blakes continued to decline back surgery and testified that he was not instructed by any of his physicians to return for any treatment related to the January 2017 accident.

### Mr. Blakes' Treating Physicians

Three of Mr. Blakes' treating physicians testified. He initially presented to Dr. Bartholomew on June 22, 2017, seeking treatment for back and neck injuries resulting from the January 2017 accident. Mr. Blakes provided Dr. Bartholomew with his medical history and informed him of another motor vehicle accident in 2014, in which he injured his neck and back but stated that his pain had resolved after six months of physical therapy. At the time of his first visit to Dr. Bartholomew, Mr. Blakes reported that he was experiencing significant back pain radiating down both legs and could only walk one to two blocks.

Mr. Blakes also complained of daily neck pain. Dr. Bartholomew's review of Mr. Blakes' August 16, 2017 MRI revealed herniated discs in his neck at C3-4 and C4-5; degenerative changes were also present at C5-6 and C5-7. In Mr. Blakes' low back at L4-5, Grade 2 (or 25%) disc slippage was present, as well as an annular tear and nerve root compression, all of which could cause pain. Dr. Bartholomew noted that Mr. Blakes' disc slippage was probably congenital,

6

although it may have been aggravated by the January 2017 accident.  He opined that the accident caused Mr. Blakes' disc herniation at C3-4 and C4-5, although he conceded that the herniation at C3-4 could have preexisted the accident.  If the herniation at C3-4 was in fact a pre-existing condition, he believed that the accident exacerbated it.  Dr. Bartholomew performed a cervical fusion on Mr. Blakes on August 14, 2018, and on his first post-operative visit nine days after surgery, Mr. Blakes was "feeling good, with only an occasional ache which his medications erased." Dr. Bartholomew had five or six visits with Mr. Blakes following his surgery and testified that he believes that Mr. Blakes no longer suffers any pain in his neck.

Mr. Blakes did not undergo back surgery, and due to his congenital Grade 2 disc slippage at L4-5, Dr. Bartholomew opined Mr. Blakes would continue to have low back pain, although it would depend on how he moderated his activity.  According to Dr. Bartholomew, without surgery, Mr. Blakes will have some back pain for the rest of his life.  At trial, he gave Mr. Blakes a total body disability rating of 8-12% from his cervical fusion, and of 5% from his low back, although he admitted he had noted no disability rating in Mr. Blakes' medical record.  Instead, at the time of Mr. Blakes' last visit, Dr. Bartholomew recorded that the patient had reached maximum medical improvement in his back, with no recommendation for future back surgery, nor for any follow-up.

Dr. Robert Bostick, an expert in orthopedics, first examined Mr. Blakes relative to his hip complaints approximately a year and a half after the accident.  Mr. Blakes provided the history of his injury and stated that considerable conservative treatment had not provided pain relief.  Dr. Bostick opined that based upon the August 2017 MRI, which showed an abnormality near the femoral head

of his left hip accompanied by fluid, Mr. Blakes' jump from his truck caused a fracture. On cross-examination, however, Dr. Bostick conceded that a fracture could not definitively be determined. In addition, he admitted that the MRI showed severe, bone-on-bone osteoarthritis in Mr. Blakes' hip joint, which could not have been caused by the accident. Dr. Bostick performed an injection directly into the hip joint; however, it did not relieve Mr. Blakes' pain. Therefore, Dr. Bostick referred him to Dr. Wesley Clark, a hip specialist, for consideration of a total hip replacement.

Dr. Clark performed a physical examination of Mr. Blakes on June 11, 2019, and found he had a heavy limp with significant pain and limited range of motion. In his review of Mr. Blakes' medical records, specifically the August 2017 MRI, Dr. Clark opined that the arthritic changes in Mr. Blakes' hip were not caused by the January 2017 accident. However, Dr. Clark recommended a total replacement of Mr. Blakes' left hip due to "significant findings on the physical exam and significant pain that was unresponsive to conservative nonoperative treatment options." Mr. Blakes underwent the surgery on September 25, 2019, and was out of work for ten weeks which Dr. Clark testified is not unusual. Dr. Clark saw Mr. Blakes five or six times post-operatively and he no longer exhibited hip pain and could walk normally. Dr. Clark released Mr. Blakes from care with no disability or impairment rating, no restrictions except avoiding high impact, and no follow-up other than routine check-ups.

**Defendants' Medical Experts**

Defense experts Dr. Chad Millet, an orthopedic surgeon, and Dr. Najeeb Thomas, a neurosurgeon, both opined that Mr. Blakes' physical ailments prior to the January 2017 accident were sufficient to require surgical intervention.

Dr. Millet reviewed Mr. Blakes' medical records, and noted that severe degenerative arthritis of the left hip with loss of cartilage was shown in the August 2017 MRI. He also examined Mr. Blakes on February 1, 2019. Dr. Millet stated that Mr. Blakes' severe arthritis was "end-stage," and had taken many years to develop to that degree; it predated the accident of January 2017, and more probably than not, caused the need for surgery. However, Dr. Millet admitted that arthritis can be aggravated by trauma and pointed out that before the accident Mr. Blakes was receiving treatment and medication for his left hip only as needed.

Dr. Thomas also examined Mr. Blakes and reviewed his medical records going back many years, discovering that Mr. Blakes was involved in a motor vehicle accident in March 2003, bringing the total number of accidents he has experienced to three. In 2003, x-rays were taken, which showed Grade 1 disc slippage at L4-5. By the time Mr. Blakes was involved in the second of his motor vehicle accidents in 2014, x-rays showed he had developed Grade 2 slippage of the disc at L4-5, which did not appear to result from trauma. Dr. Thomas noted that this type of slippage almost always causes an annular tear in the area. He also noted that Mr. Blakes' CT scan taken at the time of the 2017 accident showed degenerative changes in the cervical spine. Additionally, tests performed during Dr. Thomas' physical examination of Mr. Blakes prior to his September 2019 hip replacement revealed that most of his pain emanated from his hip, and Mr. Blakes reported that the pain was the same type that was present before the 2017 accident. Dr. Thomas opined that Mr. Blakes' major problem was his hip pain, and testified that "by [Mr. Blakes'] own admission and the records, this appears to have predated the accident on the left side and is not related to the accident." He also

asserted that the January 2017 accident did not cause any acute injury to Mr. Blakes' lower back.

**Assignment of Error**

The narrow issue before this Court is whether the jury's award for damages for past, present and future physical pain and suffering is insufficient because the facts and inferences are so strongly and overwhelmingly in Mr. Blakes' favor that reasonable jurors would have reached a different conclusion. A verdict may not be changed for a mere preponderance of the evidence and a jury's assessment of the appropriate amount of damages, or "quantum," is a determination of fact and is entitled to great deference upon review. *Harts v. Downing,* 2019-0620, p. 10 (La.App. 4 Cir. 6/24/20), 302 So.3d 102, 111.[3] In making that determination, a jury may choose between witnesses, including expert witnesses, and use expert testimony along with its own common sense and experience to arrive at its conclusions of fact. *Id.* Before an award made by a jury is disturbed, an appellate court must first find that the jury abused its great discretion. *Id.* "Reasonable persons frequently disagree about the measure of damages in a particular case." *Id., quoting Guillory*, 2009-0075, pp. 15-16, 16 So.3d at 1117. Thus, only when an award is, in either direction, beyond what a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, should an appellate court increase or reduce an award. *Id.* While we recognize the jury's award for past, present and future physical pain and suffering may appear low in relation to other awards, this Court is confined by

---

[3] The Louisiana Supreme Court has called the discretion accorded to the trier of fact in determining damage awards "vast." *Duncan v. Kansas City S. Ry Co.,* 2000-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682.

cases which instruct us to follow the fundamental principle that great deference should be afforded to the factfinder and it is only when a reviewing court finds that the factfinder has abused "its much discretion" can the court conduct a *de novo* review of the record. *See Wainwright v. Fontenot*, 2000-0492, p. 8-9 (La. 10/17/00), 774 So.2d 70, 76.[4]

In the case *sub judice*, we find the facts and inferences are not so strongly and overwhelmingly in favor of Mr. Blakes that reasonable jurors could not have awarded $50,000.00 for past, present and future physical pain and suffering. Mr. Blakes testified that prior to the accident, his neck and back did not cause him pain. In contrast, Mr. Blakes' medical records revealed that he previously injured his neck in a 2014 motor vehicle accident and that degenerative changes in his neck were present at C5-6 and C5-7. Additionally, Dr. Bartholomew, Mr. Blakes' treating physician, opined that his disc herniation at C3-4 possibly preexisted the January 2017 accident. However, irrespective of whether Mr. Blakes suffered an aggravation of pre-existing conditions, both he and his treating physician testified that Mr. Blakes was pain-free in his neck following his cervical fusion of August 14, 2018.

Pertinent to Mr. Blakes' back, Dr. Bartholomew testified that the disc slippage in Mr. Blakes' lower spine at L4-5 was probably present from birth. The evidence presented showed that this disc slippage became more pronounced through Mr. Blakes' life, reaching Grade 2, or 25%, by the time of the 2017 accident. Dr. Bartholomew testified that Mr. Blakes would likely continue to have back pain which could require surgery and assigned him a disability rate of 5% for

---

[4] in *Wainwright, supra*, our Louisiana Supreme Court declined to overturn a "zero" award for general damages, finding that no abuse of the jury's vast discretion occurred despite the fact that the jury awarded $1,500.00 in medical expenses.

his back, but stated that he related Mr. Blakes' back pain to his congenital slipped disc, and not to the 2017 accident.

Regarding Mr. Blakes' hip, the evidence at trial revealed that arthritis was present as far back as 2012, and by the time of the accident, it had developed to a severe, bone-on-bone state which could have required surgery. Although Dr. Bostick, the first physician who treated Mr. Blakes' hip, opined that the January 2017 accident could have caused a hip fracture, he conceded on cross-examination that a fracture could not conclusively be determined. Further, the orthopedic surgeon who performed Mr. Blakes' total hip replacement, Dr. Clark, testified that the severe arthritic changes present were not caused by the January 2017 accident. Dr. Clark also testified that after the surgery on September 25, 2019, Mr. Blakes no longer exhibited hip pain and could walk normally, with no disability rating, no restrictions except avoiding high impact, and no follow-up.

We find the testimony provides a reasonable basis for the jury's award. While Mr. Blakes filed a JNOV on one line of damages: past, present and future pain and suffering, we cannot ignore the fact that the general damage award totaled $180,000.00. Mr. Blakes' testimony coupled with the other medical testimony and evidence suggests that Mr. Blakes' hip and neck injuries were completely resolved by the time of trial. While he continued to suffer back pain, he stated that he had no plans for further medical treatment and the jury awarded him $80,000.00 for his future disability. While another jury may have awarded a greater verdict, it is not proper for an appellate court to substitute its finding for that of the jury who accepted all the testimony and evidence. *See Harts, supra*.

Based on our review of the record, we cannot conclude that the trial court erred in denying Mr. Blakes' motion for JNOV.

12

**Additur**

Having determined that Mr. Blakes' motion for JNOV was properly denied, we pretermit any discussion as to whether the trial court erroneously refused to increase the award for past, present and future physical pain and suffering to $450,000.00.

Accordingly, based on the foregoing, we affirm the judgment of the trial court.

**AFFIRMED**